IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLENE A. TARR CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12CV127 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Charlene A. Tarr Clark brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. (Doc. 1.) The parties have filed cross-motions for judgment (Docs. 7, 9), and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be granted, Clark's motion will be denied, and this case will be dismissed.

I.  BACKGROUND

Clark filed her application for Disability Insurance Benefits ("DIB") on September 22, 2009, alleging a disability

onset date of November 9, 2007. (Tr. at 118-19.)[1] Her application was denied initially (id. at 67) and upon reconsideration (id. at 68). Thereafter, Clark requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Id. at 92-93.) Clark, along with her attorney and a vocational expert ("VE"), attended the subsequent hearing on May 5, 2011. (Id. at 27.) The ALJ ultimately determined that Clark was not disabled within the meaning of the Act (id. at 26) and, on December 12, 2011, the Appeals Council denied Clark's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 1-5).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since November 9, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: tarsal tunnel syndrome of the right foot, fasciitis of the right foot, diabetes, kidney stones, obesity, depression, anxiety, mild mental retardation (20 CFR 404.1520(c)).

. . . .

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 4.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except frequent but not continuous foot control operation with the right; never climb ramps or stairs; never climb ladders, ropes or scaffolds; never balance; occasional stoop, kneel, crouch, crawl; frequent but not continuous handling objects that is gross manipulation with the left non-dominant hand; frequent but not continuous fingering, that is fine manipulation of items no smaller than the size of a paper clip with the left non-dominant hand; able to remember and carry out one to two step instructions; able to perform simple, routine and repetitive tasks; no interaction with the public; occasional interaction with co-workers.

. . . .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(Id. at 16, 19, 24.)

The ALJ then considered Clark's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a))." (Id. at 25.) Thus, the ALJ

determined that Clark was not disabled under the meaning of the Act. (Id. at 26.)

## II. ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case *de novo*." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a

4

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that equals or exceeds an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Clark had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 16.) She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Clark suffered from the following severe impairments: tarsal tunnel syndrome of the right foot, fasciitis of the right foot, diabetes, kidney stones, obesity, depression, anxiety, and mild mental retardation. (Id.) The ALJ found at step three that these impairments did not meet or medically

equal a disability listing. (Id.) Accordingly, he assessed Clark's RFC and determined that she could perform sedentary work with some further limitations. (Id. at 19.) Because Clark's past relevant work as a cashier, rental-car driver, and at a kennel do not meet those criteria, the ALJ found at step four that she could not return to any of these jobs. (Id. at 24.) Thus, the burden shifted to the Commissioner to prove that a "significant number of jobs exist which [Clark] could perform, despite [her] impairments." Hines, 453 F.3d at 563. The ALJ then relied on the testimony of the VE and determined that Clark could perform the jobs of surveillance system monitor and electrical accessories assembler. (Tr. at 25.) Thus, the ALJ concluded that Clark was not disabled under the Act. (Id. at 26.)

Clark first argues the ALJ improperly ignored IQ and Global Assessment of Functioning ("GAF") scores that illustrate further limitations than provided for in the RFC. (Doc. 8 at 13-14.) In fact, the ALJ did consider all of Clark's reported GAF scores, including scores of 39 and 35 recorded in late 2010, while she was experiencing severe depression. (Tr. at 22.) While GAF scores below 50 do indicate a severe impairment, the ALJ properly gave the scores little weight. Other GAF scores ranged from 55 to 60, indicating only a moderate impairment in functioning. In any event, the Social Security Administration

9

does not endorse the use of GAF scores in disability determination because "the GAF does not directly correlate to the severity requirements in the mental disorders listings." Kozel v. Astrue, Civ. No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) (citing 65 Fed. Reg. 50, 746-01, 764-65 (Aug. 21, 2000)). Thus, even if the ALJ did err, such error would have been harmless.

To the extent Clark argues that the ALJ impermissibly discounted her full-scale IQ score of 59 in favor of her earlier full-scale IQ score of 88 (Tr. at 19, 130), this argument is also unpersuasive. In the Fourth Circuit, ALJs have discretion to reject an IQ score, even if it is the only one on the record. Hancock, 667 F.3d at 474-75. The ALJ properly determined that Clark's prior IQ score from high school (during her developmental period) was more consistent with the record as a whole and more probative of her ability to function than the one obtained for the purposes of disability determination. See id. Moreover, there is no indication that Clark suffered from any injury or disease that would have caused a precipitous drop in IQ. Thus, the ALJ committed no reversible error.

Next, Clark contends the ALJ improperly discounted the opinions of Drs. John A. Suramonte (Tr. at 301-05) and Scott T. Schnell (id. at 278-82). (Doc. 8 at 12-13.) With respect to Dr. Suramonte, Clark argues that the ALJ's decision to credit

10

the opinion "to the extent it is not inconsistent with the [RFC]" was improper because it was a conclusory statement. She also argues, without any evidence, that Dr. Suramonte was a treating physician and thus entitled to "controlling weight" under 20 C.F.R. § 404.1527(c). However, the record indicates that Dr. Suramonte only examined Clark once; he plainly was not a "treating physician" under the regulations. See Miller v. Astrue, No. 2:10CV00038, 2011 WL 1042741, at *3 (W.D. Va. Mar. 20, 2011) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004)).[4] Thus, his opinion was not entitled to controlling weight. It was not error for the ALJ to partially discount his opinion in the face of objective evidence and opinion evidence from multiple other consultants supporting the RFC calculation. (See Tr. at 23-24 (citing id. at 288-300, 337-52).)

As to Dr. Schnell, Clark also erroneously argues that he qualifies as a treating physician when the record indicates, and the ALJ stated, that he was not. Thus, his opinion was not entitled to controlling weight. Clark also contends the ALJ erred by discounting Dr. Schnell's opinion because it "failed to identify [Clark's] specific functional limitations." (Id. at 23; Doc. 8 at 16.) The court has carefully reviewed Dr.

---

[4] See 20 C.F.R. § 404.1527(c)(2)(i) (explaining that length of the treatment relationship and frequency of examinations are important factors in determining the weight given to a medical opinion).

11

Schnell's report and rejects Clark's argument. Dr. Schnell recognized that (1) Clark's "ability to perform simple repetitive task[s] is adversely influenced by ongoing complaints of pain, limitation of motion of the right foot, [and] walking with the aid of a cane"; (2) her "ability to form working relationships with others is adversely influenced by ongoing limitation of [a] general fund of knowledge"; and (3) her "ability to tolerate stress and pressures associated with day-to-day employment is adversely influenced by ongoing complaints of foot-pain, difficulty standing, walking, lifting, and bending." (Tr. at 280-81.) However, the report provides no opinion as to what Clark could still do despite those limitations. Thus, the ALJ did not err when she discounted Dr. Schnell's opinion.

### III. CONCLUSION

For the reasons stated, the court finds that the factual findings of the ALJ, which were adopted by the Commissioner, are supported by substantial evidence and were reached through application of the correct legal standard.

IT IS THEREFORE ORDERED that Clark's motion for judgment on the pleadings (Doc. 7) is DENIED, the Commissioner's motion for judgment on the pleadings (Doc. 9) is GRANTED, and this action is DISMISSED.

/s/   Thomas D. Schroeder
                                        United States District Judge
May 20, 2014